WILLIAM T. BRIGGS *v.* JAMES M. HINTON *et al.*

1. OFFICIAL BOND, SHERIFF. *Appeal bond, surety on. Right of subrogation. Officious payment.* Sureties on the official bond of a sheriff, against whom judgment has been rendered for default of sheriff, the sheriff alone appealing to the Supreme Court, are not in the jurisdiction of the latter court, and it can render no judgment against the sureties not appealing.

2. The surety in such case, though not bound by the Supreme Court judgment, is bound by the judgment below for the same original liability, and his payment of Supreme Court judgment without execution to the amount of the judgment below, is not an officious payment.

3. On the payment by the surety of the debt, he becomes entitled to the rights of the creditor in the appeal bond, and the sureties in the appeal bond are liable before the sureties on the official bond.

4. The surety on sheriff's bond, who pays a judgment against him and the sheriff, for the default of a deputy sheriff, is entitled to have the bondsmen on the deputy sheriff's bond to the sheriff held liable.

5. A surety cannot hold his co-sureties liable for any payment made by him, which he was not bound to pay.

FROM DAVIDSON.

Appeal from the Chancery Court at Nashville. A. G. MERRITT, Ch.

J. C. & J. M. GAUT for Briggs.

DEMOSS & MALONE for Mrs. Stewart.

ROBT. L. MORRIS for Tally heirs.

NATHANIEL BAXTER for Mrs. Horne.

DEADERICK, C. J., delivered the opinion of the court.

On November 28, 1873, complainant filed his bill in the chancery court at Nashville against defendants, alleging that at the April term, 1862, of the county court of said county, the complainant and M. S. Stewart, with others not made defendants because insolvent, became securities upon the official bond of defendant, Hinton, who was qualified as sheriff of said county; that said Hinton afterwards appointed one Thomas Hobson as one of his deputies, and took from him an official bond in the penalty of $10,000, for the faithful performance of his duties as deputy sheriff, with Nicholas Hobson and Reuben Tally as his sureties; that said deputy afterwards received for collection an execution for $1,191.40, in favor of one Franklin against one McKay, upon which said deputy made an insufficient return, and thereupon, upon motion, judgment was rendered in favor of Franklin, on April 17, 1868, for $1,503 and costs, against Hinton and his sureties on his sheriff's bond in the circuit court of said county; that said Hinton consented to an appeal by said N. and Thomas Hobson giving bond and security for appeal, which they did, defendant, Narcissa Horne, becoming security on said appeal bond. By an amendment, it is charged, that Hinton alone appealed, and that none of the securities on his official bond appealed, and a copy of said appeal bond is exhibited with the amended bill. The bill then alleges that the other securities knew nothing of the appeal, and never authorized the same or signed the

bond therefor, and complainant insists that he was not liable on the judgment rendered on said appeal by the Supreme Court, as he did not appeal from the judgment of the circuit court against him.

It is further alleged, that on December 16, 1872, judgment was rendered against all the defendants below by the Supreme Court, and against the parties to the bond for appeal for the whole amount of the judgment below, and that he, the complainant, has paid the same, amounting to $2,234.50.

It is further alleged, that Hinton, on March 28, 1870, took a judgment over on Thomas Hobson's bond against him- and Nicholas Hobson, for $1,688.52, and that Reuben Tally, also a surety on Thomas Hobson's bond, was then dead, and no judgment was taken against him. Said Tally's heirs are made defendants to this bill.

Complainant insists he has the right to be reimbursed for payment of said judgment, by the parties who appealed and signed the appeal bond, Mrs. Horne being surety thereon is first liable, and to contribution by Mrs. Stewart, if not thus reimbursed, she being the administratrix of her late husband, M. S. Stewart, deceased, who was the only other solvent surety, beside complainant, of said Hinton.

A second amended bill was filed by complainant, making the administrator *de bonis non* of the estates of E. A. Horne and Reuben Tally defendants, the complainant claiming that he is entitled to be substituted to the rights of Hinton in the bond of Thomas Hobson, his deputy, who made the insufficient return,

and that said Horne's and Tally's estates are solvent, and they are the only solvent sureties of said Thomas Hobson.

Answers were filed by Mrs. Horne, the administratrix of Horne, Tally and Mrs. Stewart, the heirs-at-law of Tally and Stewart, and by Hobson and wife, raising questions presented in the report of the Referees.

The chancellor decreed that Hinton alone appealed from the judgment of the circuit court against him and his sureties on his official bond, without the knowledge of said sureties, and gave as sureties for the appeal N. Hobson and Narcissa Horne, in the sum of $3,006.22; that the judgment of the circuit court was affirmed by the Supreme Court, December 16, 1872, and was so entered as to include the sureties of both the appeal bond and official bond; that neither complainant nor M. L. Stewart knew of or consented to the appeal, nor was either of them on the appeal bond, and neither had knowledge of the suit until after the affirmance aforesaid, and that said judgment was paid by complainant.

The court further adjudged that the Supreme Court had no jurisdiction of complainant or of Stewart, and that the judgment against them was void. His Honor further held that the payment of the judgment by the complainant was officious as to Stewart, and that he had no right to call upon his estate for contribution; that the payment as to defendant, Horne, was a ratification of the appeal by complainant, and he is not entitled to recover against her; and that the second clause of the demurrer of Tally's heirs should be sustained; and

the chancellor dismissed the bill as to Mrs. Stewart, Mrs. Horne, and Tally's heirs. But he rendered a decree in favor of complainant against Gannaway, the administrator of Tally, for the sum of $3,210, to be paid out of the personal assets of said estate, but as it appeared, no such assets had come, or would come to his hands, complainant was allowed to proceed to subject the property that had passed to the heirs. The chancellor also rendered a decree in favor of the complainant against Hinton, the sheriff, and Hobson, his deputy, for the sum of $3,210.

Complainant appealed from so much of the decree as refused him relief against Mrs. Horne and Mrs. Stewart as administratrix, and has also filed the record for writ of error.

The Referees find that it is satisfactorily shown that Hinton alone appealed, and that Nicholas Hobson procured Mrs. Horne to join him in becoming surety on the appeal bond. Nicholas Hobson, and Mrs. Horne's husband, then dead, were sureties to Hinton on the deputy sheriff's bond, and the complainant and Stewart took no appeal; this is also apparent from the bond itself, as it purports to be the bond of Hinton, N. Hobson and Mrs. Horne. And in this conclusion we think they are correct. The complainant and Mrs. Stewart not having in fact appealed, this court had no jurisdiction to render any judgment against them, and the fact that they did not appeal may be shown either by the record or by proof *aliunde*: 8 Hum., 489; 12 Heis., 303; 18 Wall., 466.

But although complainant was not bound by the Supreme Court judgment, he was bound by another judgment for the same original liability, upon which an execution might have issued, and would have issued, if he had not paid the amount demanded.

The Referees also find that when complainant paid the debt to Franklin he became entitled to the rights of Franklin in the appeal bond, and the sureties in the appeal bond, by the judgment of the Supreme Court, were liable for the debt before the sureties on the official bond; that the obligors in the bond of the deputy are next liable, and next the solvent sureties on the sheriff's official bond. They, therefore, recommended a reversal of the decree.

To this report Mrs. Horne and Tally's heirs except.

Mrs. Horne's first and second exceptions go to so much of the report as finds that she was surety on the appeal bond for Hinton only, and not for complainant, and in admitting parol evidence to contradict the recitals of the bond, that all the sureties on the official bond appealed.

The judgment of the circuit court was rendered against the sheriff and his sureties, and the record recites the defendants except, and *they* also pray an appeal, etc., which is granted, bond and security having been given according to law. The bond for appeal recites: "We, Jas. M. Hinton, N. Hobson and Narcissa H. Horne" are held, etc.

The condition is: "James M. Hinton *et als.* have prayed," etc., "if said James M. Hinton *et als.* shall

well and truly prosecute said appeal," etc. This bond
is signed Jas. M. Hinton, N. Hobson, Narcissa Horne.
It is in legal effect the bond of Hinton. He can-
not bind his sureties by his bond. His recital of
" Jas. M. Hinton *et als.* have appealed," cannot be
construed as imposing any obligation on persons who
did not appeal or sign the bond. He is principal,
and they sureties in the judgment appealed from, hav-
ing different rights in respect to it. So that on its
face the bond does not purport to be the bond of
complainants, and besides, the evidence is full and
clear that neither the complainant nor the said Stew-
art had any knowledge that such an appeal was taken.
That the fact that they did not appeal may be shown
by parol evidence, even where a bond recites other-
wise, we think is well settled in Tennessee. But in
this case we think the bond itself shows upon its
face that complainant and Stewart did not appeal.

Third. It is said the Referees erred in reporting
that a surety who becomes bound in the course of
legal proceedings for the principal is not a co-surety
of the original surety for the debt. They are both
bound to the creditor of the principal, but as be-
tween themselves it is held that one who becomes
surety, in the course of legal proceedings against the
principal, has no right of contribution against the
original surety for the debt, but on the contrary the
latter has the right to be subrogated to the creditor's
right against him: 4 Sneed, 191; 1 Lea, 612; 8
Hum., 489. And this is what the Referees correctly
held.

Fourth. It is next objected that the Referees erred' in reporting that Briggs, by paying the Supreme Court judgment, was not estoppad from impeaching it as a valid judgment against himself.

As stated, the judgment of the Supreme Court was an affirmance of the judgment of the circuit court. Both judgments were upon the same cause of action. That of the circuit court was in force against complainant; an execution might issue against him upon it. He admitted his liability, and was not bound to await the issuance of an execution. The payment of the Supreme Court judgment was a satisfaction of the other and a discharge of the whole claim of the creditor, and entitled complainant to all the creditor's rights against those who were first or jointly bound with him.

Fifth. It is also objected that the Referees did not report that the bond was illegally required to cover the debt, etc., when it should have been for costs and damages only.

However this may be, the court had jurisdiction of the persons of the principal and his sureties on the appeal bond, and of the subject matter; and the validity of the judgment, even if erroneous, cannot be questioned in this proceeding.

Sixth. Hobson's bond, it is objected, did not cover the time at which his default occurred.

The bond does bear date, whether by clerical mistake or otherwise, of a later period than the time of the default. But all the parties in the cause recognize it as subsisting and in force before the default,

and it is so repeatedly stated to be during the progress of the cause below, and there being no contest of this fact below, nor exception to parol evidence going to show it, we assume it to be as accepted and treated, a bond covering the default in question.

We think, therefore, that the exceptions of defendant, Horne, are not well taken, and they will be overruled.

The heirs of Reuben Tally except to the report of Referees, because, they say, that they are not properly joined in the bill.

Tally's heirs were first made parties to the bill, thereupon they demurred, and insisted the suit could not be maintained against them without having an administrator of said Tally's estate. An amended bill was filed making the administrator a party, and praying to have complainant's rights against said administrator, adjudged, and insisting that having paid Hinton's debt he is entitled to be substituted to his rights against the estates and administrators of Tally and Horne on the bond of Thomas Hobson, said Tally and Horne being securities thereon.

The original and amended bills pray to have a decree against the administrators, and if necessary against the heirs for lands descended. All the parties are before the court, and complainant is entitled to have Thomas Hobson's, the defaulting deputy's, bondsmen held liable for the default as reported by the Referees, and the exception is not well taken.

The Referees report that Mrs. Stewart, as administratrix, and Stewart's estate will be liable for one-

half of the amount paid by complainant, which may
not be realized from Mrs. Horne as surety on appeal,
or from the sureties on Thomas Hobson's bond the
estate of Stewart and complainant being the only sol-
vent sureties of Hinton.

The result is, that the exceptions to the report of
the Referees are overruled, and said report is in
all respects confirmed, except that complainant's re-
covery must be limited to the amount of the judg-
ment of the circuit court and interest thereon, and
the costs of that suit, this being the extent of his
liability. And any payment made by him in excess
of this sum, he was not legally bound to pay, and
cannot hold defendants liable for.

The costs of this court and of the chancery court
will be paid by defendants.

Upon a petition to rehear, DEADERICK, C. J., said:

Complainant, Briggs, has presented a petition for
rehearing as to one point. In the opinion hereto-
fore delivered, it is held that complainant did not
appeal from the judgment of the circuit court, and
was legally bound to pay only the amount of said
judgment and costs thereon, and that this was the
extent to which he had a right to a decree against
any of the defendants, notwithstanding he paid the
full amount of the Supreme Court judgment, which
was for a larger amount than the judgment of the
circuit court.

It is insisted that in order to entitle himself to

substitution to the rights of Franklin, the creditor, against Mrs. Horne, the surety in the appeal bond, and others bound with him, complainant was compelled to pay the whole amount of said Supreme Court judgment before subrogation can take place. And section 266, Brandt on Surety, is cited in support of this proposition. That section does say, that as a general rule subrogation cannot be enforced until the whole debt is paid to the creditor, nor can there be an assignment of an entire debt to a surety, by operation of law, where the surety had paid but a part, and still owes a balance to the creditor, nor an assignment *pro tanto*, the effect of which would be to give distinct interests in the same debt to creditor and surety. In this section it is said: "It would not subserve the ends of justice to consider the assignment of an entire debt to a surety as effected, by operation of law, where he had paid but a part of it, and still owed a balance to the creditor." A surety is entitled to be subrogated to the amount of his own indebtedness, which he has paid, although it may be less than the whole indebtedness of said co-surety, subject to the creditor's right, and not in hostility to it, and the rule that he can't have subrogation until the whole debt is paid, assumes that he is liable for the whole debt, which is obviously correct, for he should not be allowed to pay part and take the benefit of the whole.

It is argued that the complainant was compelled to pay to the creditor the whole debt before subrogation could be enforced. But does it follow that

when he thus pays more than the creditor had any legal right to claim off him, that he can compel the other surety to account to him for it? A surety ordinarily has no greater rights against a co-surety than the creditor has against them both: Brandt on Sur., sec. 232.

The amount paid by complainant was in excess of the judgment in the circuit court, and to the amount of this excess was a payment of a sum due from defendants in the Supreme Court judgment, for which the complainant was not liable, and was therefore to that extent the voluntary and officious payment of the debt of another, for which he cannot have contribution from other sureties for same debt.

The decree heretofore directed to be entered will in this respect remain undisturbed, and complainant's petition for rehearing will be dismissed, as the exceptions filed by Mrs. Horne to holding her liable for any part of the judgment may be allowed so far as valid in part, though not allowed to the extent claimed.

Mrs. Horne has also presented a petition to rehear, and insists that her sixth exception was improperly disallowed. That exception, we gather from the opinion delivered in this cause, the exceptions themselves not now being with the record, that Hobson's bond did not cover the date at which the default occurred. This has reference to Thomas Hobson's bond to Hinton, made an exhibit to Hinton's deposition, and bearing date April 1, 1864.

This bond is signed by Thos. Hobson, Reuben

Tally, E. A. Horn, E. P. Fort and N. Hobson, and has a one dollar United States revenue stamp attached. Hinton does state that the above named parties were sureties of Thos. Hobson at the time of rendition of the judgment in the circuit court against him and his sureties, and exhibits the bond as stated, and said bond was assumed by the Referees and by this court in the opinion, to be the bond under which the default occurred. But a more careful examination of the record satisfies us that this was a mistake.

Complainant in his bill alleges that "on the 10th. of April, 1862, said Hinton appointed Thomas Hobson one of his deputies, and took from him a bond in the penalty of ten thousand dollars for the faithful performance of his duties as deputy sheriff, with Nicholas Hobson and Reuben Tally, now deceased, as his sureties." The bill then alleges that on June 2, 1862, a *venditioni exponas* was issued from the circuit court of Davidson county, and placed in the hands of said Thomas Hobson, who made an insufficient return thereon, for which judgment was rendered against Hinton and his sureties in favor of Wm. Franklin.

Again, it is alleged in the bill that in 1870 Hinton took judgment over against Thomas Hobson and Nicholas Hobson, his surety for $1,688.52, and costs $5.90, and that Reuben Tally, the other surety, was dead. These averments and specifications satisfy us that the facts charged were ascertained upon inspection of the record, and that the bond under

which the default occurred was the bond for $10,000, dated April 1, 1862, and to which N. Hobson and Tally were the only sureties. That Hinton obtained judgment on this bond, and having the other bond in his possession with Hobson, Tally, Horn and Fort, dated April 1, 1864, for $20,000, executed during his second term of office, he exhibited that with his deposition. Another circumstance to show this bond was executed after April 10, 1862, is that a United States revenue stamp was attached to it, such stamps not being in use here at the alleged date of the first bond.

The decree will be accordingly so modified as to declare that Horn was not one of Thomas Hobson's sureties at the time of his default. In all other respects the former opinion of the court will be adhered to, and the petition to rehear filed.